440 So.2d 1271 (1983)
CITY OF PALATKA, Appellant,
v.
STATE of Florida, Appellee.
No. 63003.
Supreme Court of Florida.
November 3, 1983.
*1272 Edward E. Hedstrom of Hedstrom & Smith, Palatka, and Daniel U. Livermore, Jr. of Livermore, Klein & Lott, Jacksonville, for appellant.
Stephen L. Boyles, State Atty. and William E. Butler, Asst. State Atty., Seventh Judicial Circuit, Palatka, for appellee.
ADKINS, Justice.
This cause is before the Court on direct appeal from a final judgment in a bond validation proceeding in Putnam County. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
The City of Palatka owns and operates a water and sewer system. The city has financed the construction and acquisition of its existing facilities in part through the issuance of revenue bonds, some of which are outstanding. The city now seeks to issue the bonds which are the subject of this proceeding for two purposes: 1) to refund the prior bonds which are outstanding in order to defease the city's contractual obligations to the holders of those prior bonds; and 2) to finance construction of a new sewage treatment plant. The city will accomplish the refunding of previously issued bonds by depositing proceeds of the proposed bonds in an irrevocable escrow for the benefit of the holders of the refunded bonds. The escrowed funds are to be invested in obligations of the United States government which are specifically designed to facilitate and implement refinancing of state and local government obligations.
In the validation proceeding the circuit court found that the revenues pledged to the repayment of the bonds by the City of Palatka constituted approximately eighty percent of the total revenues available to the city from all sources other than ad valorem tax revenues. Concluding that this would have more than an incidental effect on the exercise of the ad valorem taxing power, the court held that a referendum was required under article VII, section 12, of the Florida Constitution. The court also held that the city's previous bond issues prohibit the issuance of additional bonds pari passu out of the revenues of the water, sewer and utility tax revenues unless these revenues yield for any consecutive twelve-month period during the preceding fifteen-month period, one hundred and fifty percent of the largest principal and interest which will become due in any succeeding year. The circuit court's order states that this has not been shown and that a sum has not been set aside which is sufficient to pay the entire principal of the bonds remaining unpaid with interest when due. The court concluded that the bonds could not be validated because the debt service requirements had not been met.
The City of Palatka argues that the lower court's finding that eighty percent of all revenues available to the city from sources other than ad valorem taxes have been pledged for payment of the bonds is erroneous. The city asserts that the correct figure is forty-nine percent and the appellee has conceded in its brief and at oral argument that this figure is correct. The city challenges the court's holding that the issuance of the bonds would have more than a mere incidental effect on the exercise of *1273 the ad valorem taxing power. The city contends that the court mistakenly relied on County of Volusia v. State, 417 So.2d 968 (Fla. 1982), to support its holding.
We agree that the court's reliance on the County of Volusia case is misplaced. In County of Volusia this Court dealt with the validity of a bond issue which was secured by a pledge of all legally available unencumbered sources of county revenue, including all monies derived from regulatory fees and user charges. Volusia County had also covenanted to do all things necessary to continue receiving the various user fees pledged. The facts of the present case are easily distinguishable from County of Volusia. In this case only two specific revenue sources are pledged  water and sewer revenues and utility taxes  not all available revenues. In addition, the City of Palatka has covenanted only to maintain water and sewer rates and utility taxes at levels sufficient to pay the bonds. These limited covenants do not place a potential burden on ad valorem taxes. This situation does not fall within the purview of the County of Volusia, in which this Court reasoned that the only way Volusia County would be able to uphold its covenant to maintain the programs which generated all of its non-ad valorem revenues would be to raise ad valorem taxes to operate such programs. The mere possibility of a decrease in revenues accruing to the City of Palatka from one or two sources is not sufficient to invoke the constitutional requirement of a referendum. State v. Alachua County, 335 So.2d 554 (Fla. 1976); Town of Medley v. State, 162 So.2d 257 (Fla. 1964).
This Court's decision in Jacksonville Shipyards, Inc. v. Jacksonville Electric Authority, 419 So.2d 1092 (Fla. 1982), made a clear distinction between the holding in County of Volusia and revenue bond issues similar to the instant case. In that case, only a specific revenue source, the City of Jacksonville's annual contribution from the Jacksonville Electric Authority of electric system revenues, was pledged for payment of the bonds. We held that the possibility that the city would not receive the annual contribution would have, at the very most, a merely incidental effect on the city's exercise of its ad valorem taxing power. Likewise, we held more recently in State v. City of Daytona Beach, 431 So.2d 981 (Fla. 1983), that when two specific revenue sources have been pledged, and not all legally available non-ad valorem revenue sources, that type of pledge has only an incidental effect on ad valorem taxes.
We hold that the issuance of these bonds will have no more than an incidental effect on the taxing power of the City of Palatka. The city manager testified that none of the water and sewer utility revenues are used for other branches of city government. There simply has been no showing that ad valorem taxes will be affected by this bond issue.
The city also challenges the lower court's holding that the bonds could not be validated without referendum because the refunding plan sought to be employed did not meet the debt service requirements. The circuit court specifically recognized that defeasance, as a means of financing, has been approved by this Court in State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978). But, this Court held that the provision for payment of the bonds by defeasance is not the legal equivalent of payment and, therefore, the contractual obligations of the city in its previous bond issues could not be impaired or eliminated by this means. The record clearly shows that the ordinances upon which the previous bond issues of 1958, 1963, and 1972 were based contain covenants which prohibit the issuance of additional bonds, payable pari passu, out of the revenues of the water and sewer systems and the pledged portion of the utilities tax service, unless it can be shown that the combined receipts derived from both allocated revenue sources equal one hundred and fifty percent of the largest of the principal and interest which will become due in any succeeding year of either: 1) the bonds issued pursuant to the ordinance, including any pari passu additional bonds hereafter issued and outstanding; 2) the pari passu additional bonds proposed to be issued; or *1274 3) said outstanding utility revenue bonds or any obligations then outstanding payable from the net revenues of the combined water and sewer system or any part thereof. The ordinances further provide that the above-described covenants are to remain effective and binding as long as any of the principal of, or interest on, any of the bonds remains outstanding and unpaid, or until there has been set apart in the bond fund and reserve account a sum sufficient to pay, when due, the entire principal of the bonds remaining unpaid together with interest accrued and to accrue thereon.
The appellee, the State of Florida, asserts that the covenants are not met unless a surplus reserve fund has been set aside and that has not been done by the city. The city argues that the plan for repayment, which requires a portion of the bond proceeds be deposited in irrevocable escrow pursuant to an escrow deposit agreement, will provide a sum sufficient to pay when due all of the principal, premium, if any, and interest on the previously issued bonds. In addition, the city asserts that an irrevocable deposit of money to pay bonds is the same as payment and, thus, the plan meets the requirements of the ordinances and the bonds should be validated.
We must agree with the appellant. This Court has previously approved advance refunding of revenue bonds in which the plan for refinancing involved a deposit in irrevocable trust for the sole purpose of refunding outstanding bonds. Jacksonville Shipyards; State v. City of Sunrise. The effect of the deposit into escrow in the refunding plan herein sought to be validated is to remove the lien against the water and sewer revenues and excise taxes securing payment of the refunded bonds and to enable the new bonds to be sold with a first lien on such revenues. We find that the plan does meet the requirements of the ordinances.
Accordingly, we reverse the order of the circuit court and remand for entry of a final judgment validating the bonds.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.